UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSIE M. GRAY,

    Plaintiff,                                  Civil Action No. 11-12075

v.                                          HON. JOHN CORBETT O'MEARA
                                              U.S. District Judge
                                              HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Rosie M. Gray brings this action pursuant to 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Doc. #15] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Doc. #14] be DENIED.

## PROCEDURAL HISTORY

On August 3, 2007, Plaintiff filed applications DIB and SSI, alleging disability as of December 1, 1989 (Tr. 27, 33, 121). After the initial denial of the claim, Plaintiff requested

an administrative hearing, conducted on December 17, 2009 in Detroit, Michigan before Administrative Law Judge ("ALJ") John J. Rabaut (Tr. 31). Plaintiff, represented by attorney Larry R. Maitlin, II, testified (35-52), as did Vocational Expert ("VE") Lawrence Zatkin (Tr. 52-59). On January 11, 2010, ALJ Rabaut found Plaintiff not disabled (Tr. 20). On March 31, 2011, the Appeals Council denied review (Tr. 1-4). Plaintiff filed suit in this Court on May 11, 2011.

## BACKGROUND FACTS

Plaintiff, born June 21, 1956, was 53 when the ALJ issued his decision (Tr. 20, 27). She completed one year of college, working previously in various temporary positions (Tr. 151, 155). Plaintiff alleges disability as a result of depression, hypertension, asthma and an obsessive compulsive disorder ("OCD") (Tr. 150).

### A. Plaintiff's Testimony

Plaintiff testified that she currently lived in Detroit, Michigan with her daughter and grandchildren (Tr. 36, 44). She stated that she finished high school and completed one year of college (Tr. 36). Plaintiff agreed to amend her onset of disability date to August 3, 2007 after the ALJ noted work activity in 1990, 1993, 1996, 2004, 2006-2007 (Tr. 37). She alleged that she had a "mental breakdown" at her workplace on August 3, 2007, noting that she "went into a violent rage" (Tr. 37). She acknowledged that her mood disorder was related to alcohol use, admitting that on the day of the incident, she had been drinking (Tr. 38). She stated that she "committed" herself after the workplace incident (Tr. 39). She denied holding a job or drinking since August, 2007 (Tr. 38). Plaintiff stated she worked as

a pill counter during her stint at the pharmaceutical company (Tr. 40). She stated that her driver's license was currently suspended (Tr. 40). She admitted that she had been jailed for three years for writing bounced checks, adding that upon her release, she received paralegal training (Tr. 41).

Plaintiff opined that concentrational problems and her previous assault of a relative prevented her from working (Tr. 42). She stated that she currently took Seroquel and Depakote for psychological issues (Tr. 43). She alleged suicidal ideation, noting that her psychotropic medication had recently been increased (Tr. 43). She reported that she was currently receiving therapy (Tr. 43). Plaintiff stated that she spent her waking hours watching television (Tr. 45). She stated that she seldom left the house because she believed that people were staring at her (Tr. 46). Plaintiff testified that while being treated for asthma, medical staff attempted to "to put a [tracking device] down her throat" (Tr. 47).

In response to questioning by her attorney, Plaintiff stated that her psychotropic medication made her feel "like a zombie" (Tr. 49). She alleged that she skipped meals when depressed (Tr. 50). She also alleged manic phases in which she experienced sleeping difficulties (Tr. 51). She stated that her depressive episodes were more severe than the manic ones (Tr. 52).

### B. Medical Evidence[1]

---

[1] Records pertaining to medical conditions unrelated to the disability claim, reviewed in full by the undersigned, are omitted from the present discussion.

### 1. Treating Sources

April and May, 2000 Michigan Department of Correction intake records state that Plaintiff had been unemployed at the time of her conviction, but earned money by babysitting her grandson (Tr. 243).  The interviewer found "no significant medical health problems," but a history of drug abuse (Tr. 243, 250).  Plaintiff did not appear depressed (Tr. 250).

In August, 2007, Plaintiff sought mental health treatment (Tr. 319, 497).  Raad Jajo, M.D. completed an intake exam, noting that Plaintiff reported mood swings, depression, a poor appetite, and sleep disturbances (Tr. 316, 496).  Plaintiff reported drinking one pint of alcohol per day (Tr. 317).  In September, 2007, Dr. Jajo noted that Plaintiff had been fired from all of her former jobs because of her "drinking habits" (Tr. 317).  He opined that Plaintiff "was a dramatizer" (Tr. 318).  He prescribed Depakote, Trazodone, and Zoloft (Tr. 318).  He assigned her a GAF of $50^2$ (Tr. 318).

In November, 2007, Dr. Jajo, restating his September findings, completed another assessment of Plaintiff's mental condition (Tr. 320-325).  Plaintiff reported a 1999 suicide attempt and more recently, mood swings, depression, paranoia, and sleep disturbances (Tr. 320).  She denied using alcohol since August, 2007 (Tr. 320).  Plaintiff reported that in the past, she had assaulted her niece and gotten into fights at work, but that she had not engaged in aggressive behavior since receiving medication (Tr. 321).  She stated that she stayed at

---

[2]A GAF score of 41–50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM–IV–TR* ) (4th ed.2000).

home for the most part due to her fear of getting into fights (Tr. 322). Dr. Jajo observed that currently, Plaintiff was cooperative but "hyper verbal" (Tr. 322). He noted that while Plaintiff was "a dramatizer . . . endorsing every symptom told her," she was currently oriented times three and denied hallucinations or homicidal or suicidal ideations (Tr. 323). He diagnosed Plaintiff with an alcohol induced mood disorder; a bipolar disorder; and alcohol, heroine, and cocaine dependence, but noted that the substance abuse was in remission (Tr. 325). He assigned Plaintiff a GAF of 50 (Tr. 325).

    Plaintiff sought emergency treatment in April, 2008 for a sinus headache and in May, 2008 for asthma (Tr. 382, 389). She received albuterol treatments before being discharged (Tr. 390). July, 2008 psychological treatment records show that Plaintiff was "moderately" motivated to improve her psychological condition (Tr. 510). She reported that she was currently sexually active (Tr. 510). The treating notes state that Plaintiff wanted to stabilize her moods and reduce anxiety but denied anger management problems (Tr. 507). She appeared argumentative (Tr. 505). She admitted that she drove regularly without a valid driver's license (Tr. 505). She stated that her hobbies included boating (Tr. 502). Her mood was deemed appropriate (Tr. 502). Her concentrational abilities appeared normal (Tr. 486). She was assigned a GAF of 50 (Tr. 486). September, 2008 treating notes state that Plaintiff "lik[ed]" her current medication regime (Tr. 480). In December, 2008, Plaintiff stated that she was had a good appetite, had not been paranoid and was "happy" (Tr. 476). The following month, Plaintiff stated that she was "doing well" (Tr. 475). In February, 2009, staff notes state that Plaintiff's physical problems, anxiety, and thought disruptions were

"slight" but that she had "moderate" mood swing symptomology (Tr. 473).

An April, 2009 medication review, noting that Plaintiff had a history of missing appointments, states that she was currently taking Desyrel, Depakote, and Lexapro (Tr. 466). Treating staff noted that Plaintiff was "hyper verbal and anxious" following an arrest for driving with a suspended license (Tr. 465). Notes from June, 2009 state that Plaintiff was "paranoid and depressed" (Tr. 455). The following month, Plaintiff stated that she felt better after receiving a prescription for sleeping pills (Tr. 451). In September, 2009, Plaintiff reported depression after failing to take her medication for two days (Tr. 440). Later the same month, Plaintiff was described as "hyper verbal and anxious" regarding the need for paperwork establishing disability (Tr. 437). In October, 2009, Plaintiff was advised to join a support group for recovering addicts (Tr. 434). She reported that while her medication stabilized her condition, she still experienced occasional depressive and manic moods (Tr. 433). She admitted that she was happy living with her daughter and had been involved in a monogamous relationship for 30 years (Tr. 424, 433). She stated that she attended church regularly (Tr. 432). Plaintiff reported that she was unable to work because of mental illness (Tr. 431). She appeared well groomed and cooperative with a logical thought process (Tr. 423). Plaintiff reported that she cooked for herself and socialized (Tr. 423).

In December, 2009, Joseph Marzano, M.D. completed a mental impairment questionnaire (Tr. 406-409). He assigned Plaintiff a GAF of 60, noting a diagnosis of

bipolar disorder, asthma, and legal problems[3] (Tr. 406). He noted that Plaintiff experienced frequent crying spells, depression, and violent behavior (Tr. 406). He found that Plaintiff experienced moderate deficiencies in activities of daily living and marked limitations in social functioning and in concentration, persistence, or pace (Tr. 408). He found that Plaintiff had experienced "one or two" episodes of decompensation in the past year (Tr. 408). Dr. Marzano opined that Plaintiff's mood swings, excitability, anger management problems, and depression would prevent her from working (Tr. 409).

### 2. Consultive and Non-treating Sources

In November, 2007, Cynthia Shelby-Lane, M.D. conducted a consultive examination of Plaintiff on behalf of the SSA (Tr. 329-337). Dr. Shelby-Lane noted Plaintiff's history of depression, OCD, and writing bad checks (Tr. 329). She also noted that Plaintiff experienced asthma and was using an albuterol inhaler (Tr. 329). Plaintiff admitted to the former use of cocaine (Tr. 329). Dr. Shelby-Lane noted that Plaintiff had been incarcerated between 1989-1992, and in 1995, 1997, and 1999-2003 (Tr. 330). Plaintiff alleged memory problems (Tr. 330). She demonstrated a normal stance and gait (Tr. 331).

The same month, Zahra Yousuf, M.D. conducted a Mental Residual Functional Capacity Assessment on behalf of the SSA, finding that Plaintiff was moderately limited in the ability to understand, remember, and carry out detailed instructions and maintain

---

[3] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ), 30 (4th ed.2000).

attention for extended periods (Tr. 339). Plaintiff's ability to complete her job responsibilities without psychologically based interruptions was also deemed moderately limited, as was her ability to maintain socially appropriate behavior or set realistic goals (Tr. 340). Dr. Yousuf found that Plaintiff could perform simple, unskilled tasks on a sustained basis (Tr. 341). Dr. Yousuf also completed a Psychiatric Review Technique Assessment, finding the presence of an alcohol induced mood disorder and a substance abuse disorder (Tr. 345, 350). Dr. Yousuf found that Plaintiff had moderate deficiencies in concentration, persistence, or pace, but experienced otherwise mild psychological limitations (Tr. 352). He found insufficient evidence to assess Plaintiff's condition prior to February, 2000 (Tr. 366).

A December, 2007 Physical Residual Functional Capacity Assessment found Plaintiff's physical abilities unlimited except for the need to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation as a result of asthma (Tr. 358-361).

### C. Vocational Expert Testimony

VE Lawrence Zatkin expressed doubt as to whether Plaintiff's former work as a telemarketer (sedentary, unskilled), clerical work (sedentary, semi-skilled) and pharmaceutical work (uncategorized) constituted substantial gainful activity("SGA")[4] (Tr.

---

[4] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

54-55).

The ALJ then posed the following question to the VE, taking into account Plaintiff's age, education, and work background:

> [I]f I were to ask you to assume an individual who could perform work at all exertional levels . . . would be required to avoid concentrated exposure to extreme cold, exposure to irritants such as fumes, odors, and gases and poorly ventilated areas but would require work that would be limited to simple routine and repetitive tasks performed in a work environment free of fast paced production requirements involving . . . few if any work place changes, only occasional interaction with the public and only occasional interaction with co-workers and no tandem tasks. Do you have an opinion whether such [an] individual would be able to perform any of this past work? (Tr. 55-56).

The VE replied that given the above limitations, the individual would be unable to perform Plaintiff's past relevant work but could perform the work of a nighttime office cleaner (3,500 positions in southeastern Michigan) and non-assembly line jobs of inspector, packager, sorter, and assembler (8,500) (Tr. 58). The VE testified that if the individual were also limited by the inability to stay on schedule or needed to miss more than one day each month because of concentrational problems, all full-time work would be precluded (Tr. 59).

### D. The ALJ's Decision

Citing the medical records, ALJ Rabaut determined that Plaintiff experienced the severe impairments of "alcohol induced mood disorder and asthma," finding however that neither of the conditions met or medically equaled one of the impairments found in 20 C.F.R.

Part 404 Appendix 1 Subpart P (Tr. 14-15).

The ALJ found that Plaintiff retained the Residual Functional Capacity to perform a full range of exertional work with the following non-exertional limitations:

> [A]void concentrated exposure to extreme cold; avoid concentrated exposure to environmental irritants such as fumes, dusts, [odors] and gases; avoid concentrated exposure to poorly ventilated areas; the work must be limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple, work-related decisions, and with few, if any, workplace changes; and only occasional interaction with the public and coworkers. (Tr. 16).

Citing the VE's job findings, the ALJ found that Plaintiff could perform the work of an office cleaner and inspector/sorter (Tr. 20).

The ALJ discounted Plaintiff's allegations of disability, noting that she had been fired from all of her jobs because of alcohol abuse (Tr. 18). He found that Plaintiff's credibility was undermined by the fact that she had been convicted of larceny and uttering and publishing (Tr. 17). He cited January, 2009 records showing that Plaintiff's asthma "was well controlled with medication" (Tr. 18).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S.

389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has

the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### Substantial Evidence

Plaintiff, proceeding *pro se,* argues that the stress of her former incarcerations and psychological and physical problems prevent her from performing any work. *Plaintiff's Brief* at 3, *Docket #14.* While Plaintiff is correct that her mental treating records show some degree of psychological limitation, the ALJ's finding that she can perform a significant range of work is supported by substantial evidence.

The evidence most strongly supporting Plaintiff's disability claim is Dr. Marzano's December, 2009 opinion that her psychological conditions created marked limitations in both social functioning and "concentration, persistence, or pace" (Tr. 408). The finding that Plaintiff experienced at least two "marked" limitations in the three categories of (1) daily living, (2) social functioning, and (3) concentration, persistence and pace, if credited, would result in a finding of disability. 20 C.F.R. Part 404, Subpart P, Appendix 1 §§ 12.04, 12.06. Further, because Dr. Marzano is purportedly a "treating source," his assessment of Plaintiff's condition is particularly critical.[5]

---

[5]

If the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

However, because the ALJ's rejection of Dr. Marzano's "marked" findings is well supported and well explained, remand is not warranted. The ALJ discounted Dr. Marzano's findings on the basis that he had only seen Plaintiff on one occasion (Tr. 18). The ALJ permissibly noted that Dr. Marzano's finding of marked limitations was inconsistent with his other finding of a GAF of 60, suggesting moderate rather than marked psychological limitations (Tr. 18, 406). *See* fn 3, above. The ALJ reasonably concluded that Plaintiff's recent psychological symptoms were the result of her failure to take psychotropic medication rather than an intractable and disabling condition (Tr. 18, 440). Likewise, the record suggests that Plaintiff's earlier legal and psychological problems appear to be largely attributable to her former abuse of cocaine, heroin, and alcohol (Tr. 325). Finally, Dr. Marzano's finding that Plaintiff experienced memory problems is directly contradicted by other treating source findings stating that she experienced normal recall (Tr. 423, 486).

Substantial evidence otherwise supports the ALJ's Step Five findings. In November,

---

substantial evidence in [the] case record, it must be given controlling weight." *See Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir.2009) (internal quotation marks omitted) (citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541,544; 20 C.F.R. § 404.1527(d)(2)). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *see Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391–392 (6th Cir.2004), provided that he supplies "good reasons" for doing so. *Wilson,* at 547; 20 C.F.R. § 404.1527(d)(2). In explaining reasons for rejecting the treating physician opinion, the ALJ must consider "the length of the ... relationship and the frequency of examination, the nature and extent of the treatment [,] ... [the] supportability of the opinion, consistency ... with the record as a whole, and the specialization of the treating source." *Wilson,* at 544.

2007, Plaintiff acknowledged that her psychological symptoms had subsided after beginning a medication regime (Tr. 321). July, 2008 intake notes state that Plaintiff demonstrated an appropriate mood and normal concentrational abilities (Tr. 486). Plaintiff had a good relationship with her daughter, attended church regularly, was involved in a long-term monogamous relationship, socialized, and cooked for herself (Tr. 423-424, 432-433, 476)**.** While Plaintiff has alleged that her lifestyle was limited by paranoia, depression, and anger issues, her fairly wide range of regular activity gives credence to Dr. Jajo's November, 2007 observation that Plaintiff exaggerated her symptoms of mental illness (Tr. 323). The MDOC medical records show that while Plaintiff was treated frequently for skin problems over the course of her incarcerations, she did not exhibit signs of mental illness.

I stress in closing that the recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's former substance abuse or legal problems. To the contrary, her ability to conquer her addictions is to be commended. However, based on a review of this record as a whole, the finding that she is not disabled is easily within the "zone of choice" accorded to the fact-finder at the administrative hearing level, *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment [Doc. #15] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Doc. #14] be DENIED. Any objections to this Report and Recommendation must be filed

within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                s/ R. Steven Whalen  
                                                R. STEVEN WHALEN  
                                                UNITED STATES MAGISTRATE JUDGE

Date: May 21, 2012

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on May 22, 2012.

| | |
|---|---|
| Rosie M Gray<br>15326 Rutherford St<br>Detroit, MI 48227-1920 | s/Johnetta M. Curry-Williams<br>Case Manager |